IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| EARNEST LEE GLOVER | § | |
| v. | § | CIVIL ACTION NO. 6:22cv424 |
| WARDEN SHAREE, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Earnest Glover, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants in Plaintiff's amended complaint are Warden Sharee, Warden Cuba, Sgt. Boyd, Sgt. Martinez, Officer Ridge, Office Quinn, Officer Garcia, and an unidentified lieutenant from the Safe Prisons Office.

**I. The Plaintiff's Complaint**

Plaintiff's amended complaint (docket no. 11) is the operative pleading in the case. See Montgomery v. Walton, 759 F.App'x 312, 2019 U.S. App. LEXIS 880, 2019 WL 166016 (5th Cir., January 10, 2019), *citing* King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) (amended complaint supersedes the original and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading, which Plaintiff's amended complaint here does not). In his amended complaint, Plaintiff states that in March of 2022, he received stimulus money on his account but did not sign for it until April 25. On May 1, he submitted a thumb print to the Safe Prisons Office in anticipation of Mothers Day because he wanted

to send flowers and money to his sister.  However, Plaintiff contends that Sgt. Boyd, Sgt. Martinez, Officer Ridge, and the lieutenant became jealous of his money and did not do anything, and he did not receive approval until July, when he had to do another thumb print. Plaintiff states that he filed Step One and Step Two grievances, but the grievance office covered for the officers.

On August 29, 2022, after he returned from a medical chain, Plaintiff states that he was moved from J Wing to L Wing.  On September 17, Warden Sharee (to whom Plaintiff refers as the "clean-up warden") put L wing on a "23:59 lockdown" because the 18 to 24 year old inmates would not rack up, but continued to "pop out the cells" to do drugs and drink homemade wine. Plaintiff explains that Warden Sharee stood on the run and said that she was "sent here to clean up Beto back to the 90's and I can do it," with "malice and hatred in her voice."

Plaintiff states that he and other inmates had been pleading with the administration to go to the medical department to get their insulin.  He says that Warden Sharee had inmate Barre's blood sugar so high that the nurse had to come get Barre and take him to the hospital.  Plaintiff states that the only thing which saved him was that Mrs. Sims had him sent to John Sealy Hospital in Galveston on September 19 for physical therapy and his eyeglasses.

Plaintiff says that Sgt. Boyd was walking with Warden Sharee on September 17.  Just before Plaintiff passed out and hit his head, he saw Barre pass out as well. The lieutenant from the Safe Prisons Office called the maintenance department to "unjammed the doors" [sic] so that insulin patients could not come out.  She and Warden Sharee stood on L Wing One Row and said that if the inmates did not "rack up" [return to their cells] next time, it would be the same thing." She told Officer Garcia that if any of "these MF's" pop out, to "seg them and G-5 them and ship them," apparently referring to placement in segregation or close custody and a transfer.  Plaintiff also states that Sgt. Boyd told him that "I don't give a damn if you got a pass, get your MF ass back to the wing until I call you," although he does not make clear when this happened. Plaintiff's claim against Warden Cuba says that "surely he knows what's going on at his unit, Warden Cuba is directly

responsible for the assistant warden's actions of September 12-17, 2022, when she locked down L Wing with no med treatment."

Plaintiff attached a Step One grievance to his original complaint (docket no. 1-1, p. 1) saying that on September 17, 2022, Warden Sharee and a number of other officers came to L Wing to lock all the doors, but the warden failed to realize that there were insulin dependent diabetics there. She ordered Officers Quinn and Garcia not to open any doors and to seg and ship any inmates who "pop out." He says that inmate Barre "fell out" and had to be taken to the hospital and that he, Plaintiff, had a stroke-like episode but was saved by Mrs. Sims when she sent him to John Sealy Hospital. Plaintiff told the neurosurgeon at John Sealy that he had fell and hurt his back. The copy of the Step One grievance furnished by Plaintiff does not show a response.

Plaintiff also attaches a Step Two grievance appeal form which says that he is trying to exhaust his administrative remedies in order to bring suit. He says that he received inadequate medical care and was shown medical indifference when the warden locked the doors on L Wing and proclaimed herself to be the "clean-up warden," putting the inmates there in danger. This grievance likewise does not bear a response.

In an attached declaration (docket no. 1-2, p. 1), Plaintiff states that the head warden, Warden Sharee, the Safe Prisons lieutenant, and Officers Quinn and Garcia, were told that under no circumstances should the doors be unlocked and to seg and ship inmates who "pop out." Warden Sharee told Quinn and Garcia that "I don't care who they are, lock their ass up and I'll take the hit later." He says that the safe prisons lieutenant, Sgt. Martinez, Boyd, an officer with aviator glasses, and an obese officer have been retaliating against him since August 1, 2022, when he wrote to the warden complaining that the officers had labeled him a violent sex offender and political militant. He says that he is hated because he committed a crime against women.

## II. Discussion

### A. Screening Standards

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees and identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

A complaint fails to state a claim upon which relief may be granted where it does not allege sufficient facts that, taken as true, state a claim that is plausible on its face and thus does not raise a right to relief above the speculative level. Montoya v. FedEx Ground Packaging System Inc., 614 F.3d 145, 149 (5th Cir. 2010), *citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has factual plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Hershey v. Energy Transfer Partners, L.P., 610 F.3d 239, 245 (5th Cir. 2010); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). This plausibility standard is not akin to a probability requirement, but asks for more than a possibility that the defendant has acted unlawfully. Twombly, 550 U.S. at 556.

Detailed factual allegations are not required, but the claim must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 677-78. A pleading offering "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Id. at 678.

A complaint may be dismissed if a plaintiff fails to "nudge [his] claims across the line from conceivable to plausible," if the complaint pleads facts merely consistent with or creating a suspicion of the defendant's liability, or if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. Rios v. City of Del Rio, Tex., 444 F.3d 417, 421 (5th

Cir. 2006). *Pro se* plaintiffs are held to a more lenient standard than are lawyers when analyzing a complaint, but *pro se* plaintiffs must still plead factual allegations which raise the right to relief above the speculative level. Chhim v. University of Texas at Austin, 836 F.3d 467, 469 (5th Cir. 2016). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

Although all well-pleaded facts are taken as true, the district court need not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010), *citing* Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005). Dismissal is proper if a complaint lacks a factual allegation regarding any required element necessary to obtain relief. Rios, 444 F.3d at 421.

The Fifth Circuit has explained that while *pro se* complaints are construed liberally, the court is still bound by the allegations of the complaint and is not free to speculate that the plaintiff "might" be able to state a claim if given yet another opportunity to amend the complaint. Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994). The court explained as follows:

> For example, if an IFP plaintiff, in amending his complaint through a response to a questionnaire, alleges in his response that he received inadequate medical care while incarcerated, we should not reverse the dismissal of the complaint on the basis that the plaintiff could possibly add facts that would demonstrate that he was treated with deliberate indifference in the medical care that he received. As another example, if an IFP prisoner asserts in the questionnaire response that he has been denied recreation time, we should not reverse dismissal on the ground that he might also be able to assert a claim that the denial was in retaliation for his having filed a grievance.

*Id.* at 97.

B. Application of the Standards to the Present Case

Plaintiff asserts that Warden Cuba, the head warden at the Beto Unit, surely knew what was going on and was responsible for Warden Sharee's actions. As head warden of the unit, Warden Cuba is not vicariously liable under §1983 under any theory of supervisory liability for any actions or omissions by his employees. Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 419 (5th Cir. 2017); *see also* Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) (government officials may

not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*).

Instead, a supervisor may be held liable if he affirmatively participates in the acts causing a constitutional deprivation or implements unconstitutional policies which causally result in the constitutional injury. Porter v. Epps, 659 F.3d 440, 446 (5th Cir. 2011). Plaintiff has not alleged any facts showing that Warden Cuba affirmatively participated in acts causing a constitutional deprivation or implemented unconstitutional policies or customs resulting in a constitutional injury. *See* Spiller v. City of Texas City, Texas Police Department, 130 F.3d 162, 167 (5th Cir. 1997)(in order to satisfy the cause in fact requirement, the plaintiff must allege that the custom or policy served as the moving force behind the constitutional violation at issue or that his injuries resulted from the execution of the policy or custom; the description of the policy or custom and its relationship to the underlying constitutional violation cannot be conclusory, but must contain specific facts). Plaintiff's allegations that Warden Cuba surely was aware of what was going on, and his conclusory claim that Warden Cuba was responsible for Warden Sharee's actions are simply "unadorned, the-defendant-unlawfully-harmed-me accusations" consisting of naked assertions devoid of further factual enhancement. Plaintiff has not stated a claim upon which relief may be granted against Warden Cuba.

Plaintiff contends that he wanted to send money and flowers to his sister for Mother's Day, but he was not able to do so until July. Isolated incidents of tampering or interfering with mail normally do not set out constitutional violations. Richardson v. McDonnell, 841 F.2d 120, 122 (5th Cir. 1988); Curry v. Tarrant County, Texas, 59 F.3d 1242, 1995 U.S. App. LEXIS 20120, 1995 WL 413112 (5th Cir., June 21, 1995), *citing* Smith v. Maeschner, 899 F.2d 940, 944 (10th Cir. 1990). This allegation fails to state a claim upon which relief may be granted.

Plaintiff also alludes to retaliation in a vague and conclusory manner. The Fifth Circuit has held that to state a valid claim for retaliation under §1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise

of that right, (3) a retaliatory adverse act, and (4) causation. Hines v. Marshall, slip op. no. 20-40444, 2021 U.S. App. LEXIS 29623, 2021 WL 4515392 (5th Cir., October 1, 2021), *citing* Jones v. Greninger, 188 F.3d 322, 324-25 (5th Cir. 1999); *see also* Petzold v. Rostollan, 946 F.3d 242, 252 (5th Cir. 2019).

This requirement places a heavy burden upon inmates, because mere conclusionary allegations will not suffice; instead, the inmate must produce direct evidence of retaliation or, the more probable scenario, a chronology of events from which retaliation may plausibly be inferred. Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995). The relevant showing must be more than the prisoner's personal belief that he is the victim of retaliation. Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997), *citing* Woods v. Edwards, 51 F.3d 577, 580 (5th Cir. 1995).

The Fifth Circuit has cautioned that "the prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." Woods, 60 F.3d at 1166. The court went on to explain that district courts must "carefully scrutinize" claims of retaliation in order to ensure that prisoners do not "inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around themselves." Id..

Plaintiff's conclusory allegations that the officers retaliated against him does not present a chronology from which retaliation may plausibly be inferred. Instead, it is little more than Plaintiff's personal belief that he was the victim of retaliation. As such, this allegation fails to state a claim upon which relief may be granted. Byrd v. Harrell, 48 F.4th 343, 348 (5th Cir. 2022); *see also* Ibenyenwa v. Wells, slip op. no. 21-40241, 2022 U.S. App. LEXIS 3663, 2022 WL 413941 (5th Cir., February 10, 2022).

Finally, Plaintiff asserts that Warden Sharee, Sgt. Boyd, Officer Quinn, Officer Garcia, and the unknown lieutenant in charge of the Safe Prisons Office were involved in an incident on September 17, 2022, possibly extending through September 19, in which diabetic inmates on L

Wing including Plaintiff were denied insulin, causing Plaintiff to pass out, apparently hitting his head and hurting his back. This claim is not frivolous, but requires further judicial proceedings, and these Defendants will be ordered to answer Plaintiff's lawsuit.

## RECOMMENDATION

It is accordingly recommended that all of the Plaintiff's claims except for his claim concerning the denial of insulin in September of 2022 be dismissed with prejudice for failure to state a claim upon which relief may be granted. It is further recommended that all of the Defendants except for Warden Sharee, Sgt. Boyd, Officer Quinn, Officer Garcia, and the unknown lieutenant in charge of the Safe Prisons Office be dismissed as parties to the case.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. Duarte v. City of Lewisville, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 17th day of April, 2023.**

8

_John D. Love_
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE