IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| EARNEST LEE GLOVER | § | |
| v. | § | CIVIL ACTION NO. 6:22cv424 |
| WARDEN SHIRLEY, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
ON MOTIONS TO DISMISS OF DEFENDANTS SHIRLEY AND GARCIA-CASTILLO

The Plaintiff Earnest Lee Glover, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The Defendants remaining in the case are Warden Shirley (mis-identified by Plaintiff as "Warden Sharee"), Sgt. Boyd, Officer Garcia-Castillo, and an unknown lieutenant, identified as the officer in charge of the Safe Prisons Office.

**I. The Plaintiff's Complaint**

In his active amended complaint, Plaintiff says that on August 29, 2022, after he returned from a medical chain, he was moved from J Wing to L Wing. The wing was locked down from September 12 to September 17, 2022. On September 17, Warden Shirley, to whom Plaintiff refers as the "clean-up warden," put L wing on a "23:59 lockdown" because the 18 to 24 year old inmates would not rack up, but continued to "pop out the cells" to do drugs and drink homemade wine. Plaintiff explains that Warden Shirley stood on the run and said with "malice and hatred" in her voice that she was "sent here to clean up Beto back to the 90's and I can do it."

Plaintiff states that he and other inmates had been pleading with the administration to go to the medical department to get their insulin. He says that inmate Barre's blood sugar was so high that the nurse had to come get Barre and take him to the hospital. Plaintiff states that the only thing which saved him was that Mrs. Sims had him sent to John Sealy Hospital in Galveston on September 19 for physical therapy and his eyeglasses.

Plaintiff says that Sgt. Boyd was walking with Warden Shirley on September 17, 2022. Inmates including Plaintiff and others were asking to come out of their cells for insulin. Just before Plaintiff passed out and hit his head from lack of insulin, he saw Barre pass out as well. The lieutenant from the Safe Prisons Office called the maintenance department to "unjammed the doors" [sic] so that insulin patients could not come out. This lieutenant and Warden Shirley stood on L Wing One Row and said that if the inmates did not "rack up" [return to their cells] next time, it would be the same thing." Plaintiff says the lieutenant told Officer Garcia that if any of "these MF's" pop out, to "seg them and G-5 them and ship them," apparently referring to placement in segregation or close custody and a transfer. Plaintiff also states that Sgt. Boyd told him that "I don't give a damn if you got a pass, get your MF ass back to the wing until I call you," although he does not make clear when this happened.

Plaintiff attached a Step One grievance to his original complaint (docket no. 1-1, p. 1) saying that on September 17, 2022, Warden Shirley and a number of other officers came to L Wing to lock all the doors, but the warden failed to realize that there were insulin dependent diabetics there. The warden ordered Officers Quinn and Garcia not to open any doors and to seg and ship any inmates who "pop out." He says that inmate Barre "fell out" and had to be taken to the hospital and that he, Plaintiff, had a stroke-like episode but was saved by Mrs. Sims when she sent him to John Sealy Hospital. Plaintiff told the neurosurgeon at John Sealy that he had fell and hurt his back. The copy of the Step One grievance furnished by Plaintiff does not show a response.

Plaintiff also attaches a Step Two grievance appeal form which says that he is trying to exhaust his administrative remedies in order to bring suit. He says that he received inadequate

medical care and was shown medical indifference when the warden locked the doors on L Wing and proclaimed herself to be the "clean-up warden," putting the inmates there in danger. This grievance likewise does not bear a response.

In an attached declaration (docket no. 1-2, p. 1), Plaintiff states that the head warden, Warden Shirley, the Safe Prisons lieutenant, and Officers Quinn and Garcia were told that under no circumstances should the doors be unlocked and to seg and ship inmates who "pop out." Warden Shirley told Quinn and Garcia that "I don't care who they are, lock their ass up and I'll take the hit later."

## II. The Motions to Dismiss

In her motion to dismiss, Warden Shirley first asserts that the Eleventh Amendment bars official capacity claims for monetary damages and that Plaintiff's requests for injunctive relief lack merit due to lack of redressability.

With regard to Plaintiff's claim of deliberate indifference, Warden Shirley contends that "at most, Plaintiff has pled only that one defendant (Boyd) may have known that Plaintiff or other inmates had passes for the medical department, and that Plaintiff has pleaded no facts demonstrating that Shirley knew of a substantial risk to his health if he was not seen by medical during this short time frame. Warden Shirley also asserts that "while plaintiff's pleadings are difficult to follow, it's clear that the alleged deprivation of plaintiff's insulin resulted in no serious harm to him. While plaintiff claims to have 'hit his head, before passing out' due to insulin deprivation, he goes on to acknowledge that 'Mrs. Sims sent me to John Sealy on September 19, 2022, for treatment."

Thus, Warden Shirley maintains that "plaintiff's complaint that his constitutional rights have been violated because he allegedly did not receive insulin in a two to possibly 3 day window in September 2022 does not rise to the level of deliberate indifference. To the contrary, plaintiff acknowledges in his pleadings that he was taken to John Sealy for care on September 19, 2022. Plaintiff provides no additional details regarding defendants or their involvement in any alleged constitutional violation. Even if plaintiff could prove defendants' involvement in the alleged

3

lockdown deprived him of insulin, such deprivation does not rise to the level of deliberate indifference under the law of this circuit."

Officer Garcia-Castillo's motion to dismiss largely tracks the motion filed by Warden Shirley. He says that "while plaintiff claims that Garcia-Castillo was ordered to lock the doors by his superiors, plaintiff provides no additional details regarding Garcia-Castillo or his involvement in any alleged constitutional violation." He goes on to assert that even if Plaintiff could prove Garcia-Castillo's alleged involvement in the lockdown procedure that allegedly deprived him of insulin for two to possibly three days, such a deprivation does not amount to deliberate indifference.

### III. Discussion

#### A. General Standards on Motions to Dismiss

As a general rule, motions to dismiss are evaluated on the pleadings alone and challenge a complaint's legal sufficiency, in contrast to post-discovery motions for summary judgment which evaluate whether a genuine issue of material fact remains after considering both sides' proffered evidence. Rader v. Cowart, 543 F.App'x 358, 2013 U.S. App. LEXIS 20415, 2013 WL 5509172 (5th Cir. October 4, 2013); *see also* St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 440 n.8 (5th Cir. 2000).

Fed. R. Civ. P. 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief which is plausible on its face. Severance v. Patterson, 566 F.3d 490, 501 (5th Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Supreme Court stated that Rule 12(b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 555.

Fed. R. Civ. P. 8(a) does not require "detailed factual allegations but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 677-78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A pleading offering "labels and conclusions" or

a "formulaic recitation of the elements of a cause of action" will not suffice, nor does a complaint which provides only naked assertions that are devoid of further factual enhancement. Courts need not accept legal conclusions as true, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are not sufficient. Id. at 678. A plaintiff meets this standard when he "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; *see also* Rios v. City of Del Rio, Tex., 444 F.3d 417, 421 (5th Cir. 2006).

B. Application of the Standards to Plaintiff's Pleadings

The motions to dismiss are correct in asserting that Plaintiff cannot maintain claims for monetary damages against the defendants in their official capacities. Oliver v. Scott, 276 F.3d 736, 742 (5th Cir. 2002). Likewise, the request for a transfer to another unit does not state a claim upon which relief may be granted because only the State Classification Committee, not any of the named Defendants, have the power to order a transfer. *See, e.g.*, Moore v. Lightfoot, 286 F.App'x 844, 2008 U.S. App. LEXIS 13624, 2008 WL 2570694 (5th Cir. 2008).

The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). In order to show deliberate indifference, the prisoner must show (1) objective exposure to a substantial risk of serious harm, (2) the defendants had subjective knowledge of this substantial risk, (3) the defendants denied or delayed the prisoner's medical treatment despite their knowledge of this substantial risk, and (4) this denial of or delay in treatment resulted in substantial harm. Petzold v. Rostollan, 946 F.3d 242, 249 (5th Cir. 2019).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a prisoner expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination. The prisoner committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756.

While unquestionably a high bar, however, deliberate indifference is not an impossible bar. The Fifth Circuit has explained that an inmate need not show that death or serious illness has occurred. Gates v. Cook, 376 F.3d 323, 333 (5th Cir. 2004), *citing* Helling v. McKinney, 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

Plaintiff states in his amended complaint that Warden Shirley and Officer Boyd were walking on the run and "talking down on us inmates" on September 17, 2022, while Plaintiff, an inmate named Stradic, and the inmates in cells 121 and 124 were begging to come out of their cells for insulin. Just before he passed out and hit his head, Plaintiff says that he asked Officers Quinn and Garcia for insulin. He saw an inmate named Barre passed out from lack of insulin. Warden Shirley stood on the run and said that if the inmates would not "rack up," the same thing would be done. Plaintiff's pleadings, read liberally, thus allege that Warden Shirley and Officer Garcia-Castillo were present and knew that Plaintiff and other inmates were asking for insulin, but refused to allow them to exit their cells. While his pleadings are not clear, he indicates that the lockdown may have begun five days earlier, on September 12, 2022.

The Fifth Circuit has long held that withholding care to a diabetic inmate could result in an actionable claim under the Eighth Amendment. Slay v. Alabama, 636 F.2d 1045, 1046 (5th Cir. Unit B Feb. 1981); *see also* Marlowe v. LeBlanc, civil action no. 18-00063, 2023 U.S. Dist. LEXIS 65619, 2023 WL 2957810 (M.D.La., April 14, 2023); Jones v. Texas Department of Criminal Justice, 880 F.3d 756, 759 (5th Cir. 2018) (reversing denial of a motion for injunctive relief

concerning interference with medical care for diabetes). Plaintiff's allegations are sufficient to survive a motion to dismiss for failure to state a claim.

The Defendants also invoke the defense of qualified immunity, asserting that "although qualified immunity is an affirmative defense, a court may dismiss a claim at the pleading stage if the applicability of the defense is apparent from the face of the pleadings," citing Kansa Reinsurance Co. Ltd. v. Congressional Mortgage Corp. of Texas, 20 F.3d 1362, 1366 (5th Cir. 1994).

In order to overcome qualified immunity, a plaintiff must allege facts showing that the government official violated a constitutional right and that the right was clearly established at the time of the challenged conduct. Laviage v. Fite, 47 F.3d 402, 405 (5th Cir. 2022). The Fifth Circuit has explained as follows:

> Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It protects 'all but the plainly incompetent or those who knowingly violate the law.' Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986).
>
> Our qualified immunity inquiry is two-pronged. Garcia v. Blevins, 957 F.3d 596, 600 (5th Cir. 2020). First, we ask whether the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right. Second, we ask whether the right was 'clearly established.' Id. We can analyze the prongs in either order or resolve the case on a single prong. Id.

In order to survive a motion to dismiss, a plaintiff must plead the two prongs of a qualified immunity claim - that there has been a violation of a constitutional right, and that this right was clearly established at the time of the alleged misconduct. Robinson v. Midland County, Texas, 80 F.4th 704, 711 (5th Cir. 2023).

Plaintiff's pleadings - taken as true - are sufficient to overcome the qualified immunity defense at the motion to dismiss stage of the proceedings. The right to be free from deliberate indifference to serious medical needs in the context of treatment for diabetes was clearly established in 2022, as seen in Slay and Jones. *See also* Alderson v. Concordia Parish Correctional Facility, 848 F.3d 415, 422-23 (5th Cir. 2017) (allegations that jail official delayed medical treatment by placing

prisoner in lockdown upon learning of his medical condition after being assaulted, waiting until numerous complaints had been made by prisoner and his family before taking further action, and leaving him for another hour before taking him to the hospital could support an inference of deliberate indifference and were sufficient to survive a motion to dismiss). Here, the right to be free from deliberate indifference to serious medical needs, specifically involving diabetes, was clearly established in 2022, and Plaintiff has adequately alleged a violation of that right, which is sufficient to overcome qualified immunity at this stage of the proceeding; however, the issue of qualified immunity may be revisited at the summary judgment stage. *See generally* Webb v. Livingston, 618 F.App'x 201, 2015 U.S. App. LEXIS 12445, 2015 WL 4385287 (5th Cir., July 17, 2015); Leadon v. Collier, civil action no. 6:19cv364, 2020 U.S. Dist. LEXIS 248336, 2020 WL 8265385 (E.D.Tex., November 17, 2020), *Report adopted at* 2021 U.S. Dist. LEXIS 12757, 2021 WL 244912 (E.D.Tex., January 25, 2021).

## RECOMMENDATION

It is accordingly recommended that the motions to dismiss of the Defendants Warden Shirley and Officer Garcia-Castillo (docket no.'s 27 and 30) be granted as to the Plaintiff's claims for monetary damages against them in their official capacities and for injunctive relief, and denied as to the Plaintiff's claim for damages in their individual capacities. It is further recommended that these Defendants be given 14 days in which to answer or file such other responsive pleading as may be appropriate. Fed. R. Civ. P. 12(a)(4)(A).

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is

found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See* Battle v. United States Parole Commission, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted and adopted by the district court except upon grounds of plain error. Duarte v. City of Lewisville, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 6th day of October, 2023.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE