IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| EARNEST LEE GLOVER JR. | § | |
| v. | § | CIVIL ACTION NO. 6:22cv424 |
| WARDEN SHIREY, ET AL. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff Earnest Glover, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this lawsuit complaining of alleged violations of his rights. The lawsuit was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. 636(b)(1) and (3) and Local Rule CV-72 of the Local Rules of Court for the Eastern District of Texas. The Defendants remaining in the case are Warden Traci Shirey, Sgt. Bond, Officer Garcia-Castillo, and an unknown individual whom Plaintiff names as "Officer Quinn," but whom the Office of the Attorney General for the State of Texas, representing the Defendants, has been unable to identify. This Report concerns Plaintiff's claim of a denial of insulin on September 17, 2022.

**I. The Plaintiff's Complaint**

In his amended complaint, Plaintiff says that on August 29, 2022, after he returned from a medical chain, he was moved from J Wing to L Wing. The wing was locked down from September 12 to September 17, 2022. On September 17, Warden Shirey, to whom Plaintiff refers as the "clean-up warden," put L wing on a "23:59 lockdown" because the 18 to 24 year old inmates would not rack up, but continued to "pop out the cells" to do drugs and drink homemade wine. Plaintiff explains that Warden Shirey stood on the run and said with "malice and hatred" in her voice that she was "sent here to clean up Beto back to the 90's and I can do it."

1

Plaintiff states that he and other inmates had been pleading with the administration to go to the medical department to get their insulin. He says that inmate Barre's blood sugar was so high that the nurse had to come get Barre and take him to the hospital. Plaintiff states that the only thing which saved him was that Mrs. Sims had him sent to John Sealy Hospital in Galveston on September 19 for physical therapy and his eyeglasses.

Plaintiff says that Sgt. Bond was walking with Warden Shirey on September 17, 2022. Inmates including Plaintiff and others were asking to come out of their cells for insulin. Just before Plaintiff passed out and hit his head from lack of insulin, he saw Barre pass out as well. The lieutenant from the Safe Prisons Office called the maintenance department to "unjammed the doors" [sic] so that insulin patients could not come out. This lieutenant and Warden Shirey stood on L Wing One Row and said that if the inmates did not "rack up" [return to their cells] next time, it would be the same thing." Plaintiff says the lieutenant told Officer Garcia-Castillo that if any of "these MF's" pop out, to "seg them and G-5 them and ship them," apparently referring to placement in segregation or close custody and a transfer. Plaintiff also states that Sgt. Bond told him that "I don't give a damn if you got a pass, get your MF ass back to the wing until I call you," although he does not make clear when this happened.

Plaintiff attached a Step One grievance form to his original complaint (docket no. 1-1, p. 1) saying that on September 17, 2022, Warden Shirey and a number of other officers came to L Wing to lock all the doors, but the warden failed to realize that there were insulin dependent diabetics there. The warden ordered Officers Quinn and Garcia not to open any doors and to seg and ship any inmates who "pop out." He says that inmate Barre "fell out" and had to be taken to the hospital and that he, Plaintiff, had a stroke-like episode but was saved by Mrs. Sims when she sent him to John Sealy Hospital. Plaintiff told the neurosurgeon at John Sealy that he had fell and hurt his back. The copy of the Step One grievance form furnished by Plaintiff is dated September 14, 2022, which is three days before Plaintiff says the incident occurred, and does not have any indication that it was received or answered by TDCJ personnel.

Plaintiff also attaches a Step Two grievance appeal form which says that he is trying to exhaust his administrative remedies in order to bring suit. He says that he received inadequate medical care and was shown medical indifference when the warden locked the doors on L Wing and proclaimed herself to be the "clean-up warden," putting the inmates there in danger. This grievance form is also dated September 14, 2022, and does not show that it was ever received or answered.

In a declaration attached to his original complaint (docket no. 1-2, p. 1), Plaintiff states that the head warden, Warden Shirey, the Safe Prisons lieutenant, and Officers Quinn and Garcia-Castillo were told that under no circumstances should the doors be unlocked and to seg and ship inmates who "pop out." Warden Shirey told Quinn and Garcia-Castillo that "I don't care who they are, lock their ass up and I'll take the hit later."

## II. The Defendants' Motion for Summary Judgment based on Exhaustion

The Defendants Warden Shirey, Sgt. Bond, and Officer Garcia-Castillo have filed a motion for summary judgment asserting that Plaintiff has not exhausted his administrative remedies. This motion asserts that Plaintiff did not file any grievances concerning the incidents forming the basis of his lawsuit. The Defendants note that the grievance forms attached to Plaintiff's original complaint are both signed and dated September 14, 2022, which is before the incidents complained of occurred, and neither one shows any sign of having been submitted or processed. In addition, the Defendants says that the Step Two grievance begins by saying "for the purpose [of] this lawsuit I need to exhaust my administrative remedies, 42 U.S.C. §1997e, and because I was denied medical care under the U.S. Constitution. For the purpose of this lawsuit I do not have to show that I have exhausted all grievance procedures - I can move forward on the exhausted claims that I put forth."

The Defendants argue that neither of these purported grievances appear in Plaintiff's grievance file and neither are sufficient to show exhaustion. They attach a copy of Plaintiff's grievance file, which contains multiple grievances on various issues including medical care in February of 2022, a request for return of his fans, books, and property (which was screened because the grievable time period had expired), the denial of books by an officer described as "a bucktoothed

white girl" (also screened because the grievable time period had expired), improper deductions from his inmate trust fund for medical charges, being housed improperly and mistreated by TDCJ officers from Nigeria, being treated disrespectfully by nurses and about the same improper deductions for medical charges mentioned in a previous grievance, an appeal of a disciplinary case, a TDCJ transport bus crash in which he was injured, and a grievance complaining that TDCJ officials including Warden Shirey and Sgt. Bond, as well as a law library clerk named Serralde, an officer named Laura Ridge, and the Safe Prisons Office, are refusing to furnish him with indigent supplies which prevents him from corresponding with family and friends. All of the grievances in Plaintiff's grievance file are Step One grievances; there are no Step Two appeals.

In his response, Plaintiff asserts that the TDCJ grievance system is being used as a weapon to deny inmates access to court. He says that the grievance office at the Beto Unit used "dilatory tactics" against him by interfering with his grievances. Plaintiff claims that he filed both Step One and Step Two grievances which have never been returned to him and avers that under these circumstances, he can proceed with his lawsuit.

In addition, Plaintiff argues that the TDCJ grievance process is a dead end because grievances are lost or thrown away by TDCJ officials if the grievance implicates that officer in wrongdoing. He says that he has heard officers telling inmates to "go ahead and file a grievance, I use them for refrigerator decoration." Plaintiff also states that some grievances are not processed because TDCJ is short-staffed. As a result, he argues that the grievance process is not available.

**III. Discussion**

A. General Standards for Summary Judgment

Summary judgment is properly granted only when, viewing the evidence in the light most favorable to the non-moving party, the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Ellis v. Garza-Lopez*, slip op. no. 23-10022, 2023 U.S. App. LEXIS 13305, 2023 WL 3723634 (5th Cir., May 30, 2023); *Burleson v. Texas Department of Criminal Justice*, 393 F.3d 577, 589 (5th Cir. 2004).

If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate *Allen v. Rapides Parish School Board* specific facts showing the existence of a genuine issue for trial. , 204 F.3d 619, 621 (5th Cir. 2000).

The plaintiff cannot oppose summary judgment by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated or speculative assertions, or by only a scintilla of evidence. *Boudreaux v. Swift Transportation Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There is no genuine issue for trial if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *Prison Legal News v. Livingston*, 683 F.3d 201, 211 (5th Cir. 2012); *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 328 (5th Cir. 2017) (genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party).

The court has no obligation to sift the record in search of evidence to support a party's opposition to summary judgment. *Adams v. Traveler's Indemnity Co.*, 465 F.3d 156, 164 (5th Cir. 2008). If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Rickerson v. Rust*, slip op. no. 20-40208, 2021 U.S. App. LEXIS 36489, 2021 WL 5871885 (5th Cir., December 10, 2021), *citing Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013). A properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show a genuine factual issue exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

B. Exhaustion of Administrative Remedies

The law governing the exhaustion of administrative remedies is found in 42 U.S.C. § 1997e, which provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

correctional facility until such administrative remedies as are available are exhausted.

Under this statute, prisoners are required to exhaust available administrative remedies before filing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 202, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Johnson v. Johnson*, 385 F.3d 503, 515 (5th Cir. 2004). The Fifth Circuit has held that "there can be no doubt that pre-filing exhaustion of administrative remedies is mandatory." *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). The court went on to state that "district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Id.*

Proper exhaustion is required, meaning the prisoner must not only pursue all available avenues of relief, but must also comply with all deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 89-95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). This requirement means mere "substantial compliance" with administrative remedy procedures does not satisfy exhaustion; instead, prisoners must exhaust administrative remedies properly. *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010).

All of the steps in a facility grievance procedure must be pursued in order to exhaust administrative remedies. *Johnson*, 385 F.3d at 515. The Texas Department of Criminal Justice - Correctional Institutions Division has a two-step formal grievance process, including a Step One grievance which is handled within the facility and a Step Two grievance appeal which is handled at the state level. A prisoner must pursue a grievance through both steps for it to be considered exhausted. *Id.* This means that in order for TDCJ-CID inmates to exhaust an issue properly, the issue must be presented in a Step One grievance and then appealed to Step Two. New issues cannot be raised for the first time in a Step Two grievance appeal and only one issue per grievance may be presented. *Randle v. Woods*, 299 F.App'x 466, 2008 U.S. App. LEXIS 24138, 2008 WL 4933754 (5th Cir., November 19, 2008), *citing Woodford*, 548 U.S. at 92- 93 *and Johnson*, 385 F.3d at 515;

*see also* TDCJ Offender Orientation Handbook, February 2017, p. 74 (inmates may present only one issue per grievance). The district court may not excuse failure to exhaust available administrative remedies prior to filing a lawsuit under the Prison Litigation Reform Act, even to take "special circumstances" into account. *Ross*, 578 U.S. at 639-40.

The Supreme Court has identified three circumstances under which administrative remedies are considered "unavailable." *Id*. at 643. The first of these is where the administrative remedy procedure operates as a simple dead end, with officials unable or consistently unwilling to provide any relief. The Court gave as an example where a prison handbook directed inmates to submit their grievances to a particular administrative office, but in practice that office disclaimed any capacity to consider those petitions, or if administrative officials have apparent authority, but decline ever to exercise it.

The second circumstance is where an administrative scheme is so opaque that it becomes, practically speaking, incapable of use; in other words, a mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it.

The third circumstance is when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644.

The Fifth Circuit has stated that the exhaustion requirement must be interpreted in light of its purposes, which include the goal of giving prison officials "time and opportunity to address complaints internally." *Johnson*, 385 F.3d at 516, *citing Porter v. Nussle*, 534 U.S. 516, 525, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Thus, a grievance is considered sufficient to the extent it "gives officials a fair opportunity to address the problem that will later form the basis of the lawsuit." *Johnson*, 385 F.3d at 517.

C. Application of the Standards to the Evidence

The summary judgment evidence shows that Plaintiff was aware of the administrative grievance process and pursued it on other occasions. Although he claims that the process is "a dead-end" and "is set up for him to fail," the summary judgment evidence shows that the grievance he filed concerning improper deductions from his inmate account for medical deductions was resolved in his favor - the response to this grievance stated that a review of his electronic health records showed that he had been charged in error on three separate dates and that the charges had been refunded in response to the grievance because the visits were considered follow-ups. (Docket no. 58-1, p. 41).

Although Plaintiff attached copies of Step One and Step Two grievance forms to his complaint which he says that TDCJ officials refused to process, these grievance forms plainly could not serve to exhaust his administrative remedies even if they were properly submitted but not processed. Both the Step One and Step Two grievance forms are dated September 14, 2022, at 4:00 a.m., which is three days before Plaintiff says that the incident complained of occurred. Even if this date is incorrect, the fact that both forms bear the same date shows that Plaintiff clearly did not pursue the grievance process properly. In addition, there is no indication that either form was actually submitted to prison officials.

In *Favela v. Collier*, 91 F.4th 1210, 1213 (5th Cir. 2024), the plaintiff, a TDCJ prisoner, brought suit complaining of a failure to protect him from an assault by another inmate. The defendants moved for summary judgment alleging failure to exhaust administrative remedies, attaching a grievance file showing that the prisoner had filed no grievances concerning the incident in question. In response, the prisoner filed a sworn declaration reading as follows:

> I filed a grievance after I was attacked within about 5 days or so requesting I be moved, for medical treatment for the injuries and pain, and damages for my pain and suffering and [stating] that the injuries were [the] fault of TDCJ officials who were notified of the danger I was in. I also filed an appeal of the grievance requesting the same things in the Step One grievance in a timely manner, however, I did not receive a response from TDCJ. I believe this was done to prevent a successful lawsuit.

The district court concluded that the prisoner's allegations were conclusory and could not overcome the defendants' motion for summary judgment. On appeal, the Fifth Circuit acknowledged that conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence cannot on their own create genuine issues of material fact, but concluded that the prisoner's declaration contained sufficient specificity and more than a scintilla of evidence, in that he specified that his Step One grievance was filed within five days of the incident and his Step Two appeal was filed "timely." The court distinguished *Saeli v. Cautauqua County,* 36 F.4th 445, 455 (2nd Cir. 2022), where the prisoner had filed only a grievance form which indicated on its face that it was not timely and a sworn statement which was internally contradictory and offered nothing concrete as to the date of filing of the grievance. Thus, the Fifth Circuit concluded that the district court should have taken the prisoner's sworn assertions as true and thereby determined that the prisoner had met his burden of demonstrating the existence of a genuine issue of material fact.

In the present case, by contrast, the assertions made in Plaintiff's sworn pleadings are wholly conclusory and amount to no more than a scintilla of evidence. His sworn amended complaint refers to the filing of grievances concerning another claim in his lawsuit, on August 1, 2022 (docket no. 11, p. 4); however, with reference to the present claim, he says only "grievance office CYA for these officers by withholding Step 1 & 2 beyond return date."

In his original complaint, which was superseded by the amended complaint, Plaintiff states that "Glover wrote a grievance to this lawsuit on August 1, 2022. Despite his numerous tries to exhaust his administrative remedies Mr. Price, Kirkwood is CYA over here on Beto Unit in the grievance office - good ole boy system still at play here. Have not got Step 1 back but I did get the Step 2 back, see exhibits in this exhibits [sic]. Step 2 filed and got back 9/29/2022 begging for access to inmate trust fund - no relief from safe prisons (thumb print)." As noted above, the Step One and Step Two grievances attached as exhibits are both dated September 14, 2022, three days before the incident complained of, and bear no indication of having been received or answered by TDCJ personnel.

Plaintiff's response to the motion for summary judgment is unsworn and thus cannot be considered as summary judgment evidence. *Favela*, 91 F.4th at 1215. In any event, this response refers to "the Step 1 and Step 2 that have never been returned to Glover that I placed in the grievance box on or about the 24th of September 2022." Even considering Plaintiff's unsworn response as evidence, which it is not, and assuming Plaintiff placed these grievances in the grievance box on September 24, 2022 as he says, and also assuming that the September 14 date on the grievances was an error and should have been September 24, this still would not constitute proper exhaustion because he cannot file his Step One and Step Two grievances simultaneously. *See Dillon*, 596 F.3d at 268 (inmates must follow proper procedures in exhausting administrative remedies).

In summary, Plaintiff's sworn pleadings fail to present even a scintilla of evidence comparable to that set out in *Favela* to overcome the Defendants' summary judgment evidence showing a failure to exhaust administrative remedies. The Fifth Circuit has long held that conclusory assertions of exhaustion are insufficient to overcome a properly supported motion for summary judgment. *See, e.g.*, *Gilliam v. Anderson County Sheriff's Department*, 825 F.App'x 232 (5th Cir. 2020) (conclusory assertion that plaintiff "attempted to exhaust" administrative remedies was not sufficient); *Huff v. Neal*, 555 F.App'x 289, 2014 U.S. App. LEXIS 1535, 2014 WL 274500 (5th Cir., January 27, 2014) (unsupported allegations of exhaustion are insufficient to defeat a motion for summary judgment because "conclusory allegations supported by conclusory affidavits are insufficient to require a trial,") citing *Shaffer v. Williams,* 794 F.2d 1030, 1033 (5th Cir. 1986); *see also Kidd v. Livingston*, 463 F.App'x 311, 2012 U.S. App. LEXIS 3970, 2012 WL 614372 (5th Cir., February 28, 2012) ("conclusory assertions and production of an unprocessed Step Two form in the district court failed to create a genuine dispute as to his exhaustion of this grievance,") *citing Freeman v. Texas Department of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004); *Ryan v. Phillips*, 558 F.App'x 477, 2014 U.S. App. LEXIS 5087, 2014 WL 1017117 (5th Cir., March 18, 2014) ("conclusory and unsubstantiated assertion that he initiated the applicable grievance procedure

is insufficient to refute the lack of evidence that he filed any formal or informal grievances,") *citing Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).

These holdings comport with the long-standing principle that a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Favela*, 91 F.4th at 1213; *Powers v. Northside Independent School District*, 951 F.3d 298, 307 (5th Cir. 2020).

In this case, the Defendants met their initial burden of showing there is no genuine issue of material fact, thus shifting the burden to Plaintiff to produce evidence or designate specific facts showing the existence of a genuine issue for trial. *Distribuidora Mari Jose, S.A. de C.V.*, 738 F.3d at 706. Plaintiff has failed to meet this burden. Consequently, the Defendants' motion for summary judgment should be granted.

## RECOMMENDATION

It is accordingly recommended that the Defendants' motion for summary judgment (docket no. 58) be granted and the Plaintiff's claims concerning the alleged denial of insulin be dismissed without prejudice for failure to exhaust administrative remedies.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 29th day of May, 2024.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE